### F. M. Garthwait v. Bloomington Hotel Company et al.

1. MECHANIC'S LIEN—*section 7 of act of 1895 construed.* The words, "according to the terms of the original contract," as used in section 7 of the Mechanic's Lien Act of 1895, were manifestly employed by the legislature for the purpose of fixing a definitely known time within four months after which a contractor must file his claim for lien or bring suit to enforce the same as against creditors, encumbrancers and purchasers. The time when the last payment shall become due and payable is required by the statute to be stated in the contract and the time so stated must control, regardless of any extension which may be granted. This four-months' provision, however, has no application as to a mechanic's lien proceeding brought against the party making the contract.

2. MECHANIC'S LIEN—*what does not justify withholding of payment by owner.* An owner is not justified in withholding payment to a contractor because of non-payment by the contractor of sums due subcontractors where such subcontractors have not taken the statutory steps to perfect their claims as liens against the owner.

Garthwait v. Bloomington Hotel Co.

Mechanic's lien proceeding. Appeal from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding. Heard in this court at the May term, 1906. Affirmed in part and reversed in part and remanded with directions. Opinion filed January 22, 1907.

DE MANGE & HOBLIT, for appellant.

BARRY & MORRISSEY, for appellees.

MR. JUSTICE BAUME delivered the opinion of the court.

This is a bill for a mechanic's lien under the statute of 1895, filed April 4, 1903, by F. M. Garthwait, appellant, against the Bloomington Hotel Company, the owner, and Marshall K. Howe, a mortgagee, appellees. The written contract, dated October 17, 1901, for the construction by appellant of a hotel building in the city of Bloomington, contains among other provisions, the following: That the work shall be delivered to the owner a complete and finished job of its kind and free from all claims, liens or charges, on or before August 1, 1902; that in case of his failure to complete the work on the day specified, the contractor will pay to the owner, as liquidated damages, the sum of $20 for each and every day thereafter, until said work shall be completed (Sundays excepted), said damages to be retained out of any money due the contractor under the contract or to be recovered at law; provided, that in case the contractor shall be hindered by any act or default of the owner, or of any other contractor on the work, or by strikes, or by the elements, he shall be given a just amount of extra time in which to finish the contract, said amount of extra time to be fixed by the architect, and allowed only when the contractor shall have given the architect written notice of such hindrances, immediately upon their occurrence; that the contractor shall remove from the premises all objectionable material upon an order from the architect, and sub-

stitute therefor such material, as in the opinion of the architect is called for by the drawings and specifications, or in case said work is allowed to remain, to deduct for its inferiority a proper amount of money to be estimated and fixed by the architect; that the owner shall pay to the contractor the sum of $129,000 upon written certificates issued by the architect, as the work progresses, for a sum not to exceed eighty-five per cent. of the value of the materials used and labor performed, as estimated by the architect, the owner to pay said certificates immediately upon their presentation and to make final settlements for the remainder and extras, if any, twenty days after the work shall be completed as covenanted and agreed and the architect shall have certified thereto in writing.    The contract further provides that no oversight in superintendence by the architect or certificates issued by him shall release the contractor from any obligation to do and complete the work as covenanted and agreed; that no changes or alterations shall be made in the work indicated by the drawings and specifications, except upon a written order from the architect, and in case such changes or alterations involve an increased or diminished cost, said cost shall be estimated by the architect and shall be added to or deducted from the contract price, as the case may be; that the contractor waives all claim for extra time in which to complete the work unless demand for the same was made as hereinbefore specified; that all disputes as to the true intent and meaning of the drawings and specifications shall be referred to the architect, and that the amount of all claims for allowance of extra time and money by the contractor, or for deduction by the owner, shall be estimated and fixed by the architect, and that his decision shall be final and binding upon both parties; that should the contractor at any time during the progress of the work allow any indebted-

ness to accumulate for labor or material to subcontractors or others that may become liens on the building or premises, and shall fail to pay such indebtedness within five days after demand for same by the creditors, the owner shall have the right to withhold any money due the contractor until he has discharged said obligations, and apply the same to the payment thereof; that when the work is completed the contractor shall notify the owner that he is ready for a final settlement, and both the contractor and the owner shall file with the architect all statements, claims or bills that they may wish to make before the architect renders his final certificate.

Appellant entered upon the performance of the contract immediately following its execution. During the progress of the work extensive and varied changes were made in the plans and specifications and many extras were ordered by the owner and by its tenant. On November 16, 1901, appellant wrote to the architect, R. T. Newberry, stating that the iron contractor was claiming that on account of changes made in the plans he was delayed ten days in getting out new drawings, and that a still greater delay might be occasioned in getting material from the mill, and concluded his letter, as follows: "I write to protect myself in case the owner makes any claim for delay should there be any on the building."

August 16, 1902, appellant wrote the architect, as follows:

"Regarding the delay in getting the Hotel Building finished by August 1, 1902, as per contract, I wish to say that I have been delayed to the extent of thirty-one (31) days on account of extreme cold weather. For this I can give you the exact date and temperature for each day. I have been delayed more or less on account of rainy weather through the months of May, June and July. I have also been delayed to an extent of thirty (30) days on account of changes made in the building by the own-

ers. Kindly allow me an extension of time on account of above delays.

"In regard to the progress of the building at the present time, I am hiring every man I can get. Am advertising in the papers here and even paying men's fares to Bloomington, but it seems almost impossible to get men on account of the amount of work now going on."

March 8, 1902, the Bloomington Hotel Company leased the premises to F. B. Ewins, the lease to become operative when the lessee took possession. November 1, 1902, the lessee commenced to move his furniture into the building, and on December 6, 1902, the hotel was opened to the public. Shortly prior to December 24, 1902, the architect issued to appellant a certificate for $8,000, for work done and materials furnished under the contract, which certificate was paid by the owner January 16, 1903, and is not here a matter of controversy.

Wednesday, January 8, 1903, the architect, Hanna, the president of the hotel company, Pillsbury, the local superintendent of construction, and appellant met together in Bloomington, for the purpose of considering all claims of the respective parties to the contract and adjusting the same. As a result of that meeting the architect gave to appellant a certificate, as follows:

"Bldg. No. 601.        $12,531.15.        Jan. 12, 1903.
Certificate No. 21. To Bloomington Hotel Company.
Contract price..........................$129,000.00
Extra work.............................. 11,131.15

          Total.......................$140,131.15
Former certificates...................... 127,600.00
Present certificates...................... 12,531.15

          Total.......................$140,131.15
Balance $

This is to certify, that F. M. Garthwait, Contractor, for the general work of your building, Bloomington, Ill., is entitled to a payment of twelve thousand five hundred and thirty-one & 15-100 Dollars, by the terms of contract.

R. T. NEWBERRY,
Architect.

Remarks: Steam fitters' account not included.''

January 24, 1903, L. H. Weldon, the secretary of the hotel company gave appellant a draft for $7,000, to apply on the above certificate, and also then made a claim that appellant had agreed to take stock in the hotel company of the par value of $3,000, to apply on his bill for extras. March 24, 1903, Weldon tendered to appellant a certificate of stock for $3,000 and a check for $295.60.

Appellee, Howe, demurred to appellant's bill upon the ground, first, that no claim for a lien was filed in the Circuit Court, and second, that suit was not brought within four months after the last payment became due according to the terms of the original contract. This demurrer was sustained by the court.

Appellee, the Bloomington Hotel Company, filed its answer alleging that the contract required appellant to finish the building on or before August 1, 1902, and that no suit was commenced within four months after August 21, 1902, and that no claim for a lien was filed within four months after said last mentioned date, and that appellant was not entitled to a lien under the law; that the Chicago Veneered Door Company, a subcontractor under appellant, had filed its suit against appellant and appellees claiming a lien for labor and materials in the sum of $1,936.15 against the property in question, and that appellant had not paid the said claim within five days after demand as required by the terms of the contract. The answer further alleges that the building was not completed in accordance with the terms and condi-

tions of the contract and the plans and specifications, and denies that it was completed on December 6, 1902; denies that the time for completion was extended, and denies that the materials furnished were in accordance with the contract and specifications; alleges that the question of damages for delay was never considered by the architect, and that appellee was entitled to such damages for every day between August 1, 1902, to December 6, 1902, Sundays excepted; that after the execution of the contract appellant agreed to take stock of the hotel company to the amount of $3,000 as part payment on his bill for extras, if the extras should amount to that sum or more.

The cause was referred to a special master to report the proofs together with his findings upon the law and the facts. The special master found that the architect had passed upon and accepted the work and materials in the building, and in the presence and with the assistance of Hanna and Pillsbury had estimated and fixed the amount of all claims for allowance of extra time and money by appellant, and for deductions by appellee, and had issued his final certificate to appellant for the amount due him; that appellee, the Bloomington Hotel Company, was concluded by said certificate, except in so far as some small items had been overlooked, or evident mistakes had been made in computation; that said oversights and mistakes amounted to the sum of $349.48, and should be allowed to said appellee as a credit; and that the account should be stated, as follows:

Due appellant, balance final certificate......$5,531.15
Steam fitters' account approved by architect....................................  145.42
Extras ordered direct by owner and approved by architect....................  147.70
                                        _____
                                        $5,824.27

Less deductions for oversights and mistakes.................................  349.48

Balance due appellant February 4, 1903...$5,474.79

Exceptions were filed by said appellee to the special master's report, and upon a consideration thereof the chancellor restated the account as follows:

Amount due appellant February 4, 1903, as stated by the special master.............$5,474.79

Additional amount allowed to appellant for extras.................................  1,000.00

Total amount to be allowed appellant...  6,474.79

Deductions, as follows:

Liquidated damages allowed to appellee for delay in completion of building from August 1, 1902, to December 6, 1902, 109 days at $20 per day.................$2,180.00

For revarnishing and refinishing interior of building.................  1,000.00

For defective cement floors in bath and toilet rooms...............  487.00

For defective cement floors in kitchen...........................  312.00

For failure to furnish third coat of paint......................  453.00

Total deductions..............$4,432.00

Balance due appellant February 4, 1903........................  $2,042.79

Interest at 5% from February 4, 1903, to November 11, 1905......  282.84

Total amount due appellant..  $2,325.63

A decree for a lien was accordingly entered by the chancellor in favor of appellant for the sum of $2,325.63.

Appellant prosecutes this appeal to reverse the decree of the Circuit Court, and assigns for error the ruling of the chancellor sustaining the demurrer of appellee, Howe, to appellant's bill; the finding that the architect did not on January 8, 1903, decide all matters in dispute between appellant and appellee, the Bloomington Hotel Company, except steam fitters' extras; the finding that neither the hotel company nor the architect extended the time for the completion of the building; and the order allowing said appellee $20 per day for 109 days as its liquidated damages.

Appellee, the Bloomington Hotel Company, assigns as its cross-errors the finding that appellant was entitled to a mechanic's lien; the finding that appellant was entitled to an additional allowance of $1,000 for extras; the finding that appellant was not bound to take stock in the hotel company of the par value of $3,000 to apply upon his bill for extras; the finding that the claim of the Chicago Veneered Door Company was not such a claim as entitled said appellee to withhold the amount thereof from appellant; and that the chancellor should have found that said appellee was entitled to other and additional deductions for work not performed and improperly performed, and for materials not furnished and for defective materials.

By section 7 of the Mechanic's Lien Act of 1895, it was provided, as follows: "No contractor shall be allowed to enforce such lien as against or to the prejudice of any other creditor, or encumbrancer, or purchaser, unless, within four months after the last payment shall have become due and payable, according to the terms of the original contract, he shall either bring suit to enforce his lien therefor, or shall file with the clerk of the Circuit Court of the county in which the building, erection or other improvement to be charged with the lien is situated, against the

owner, a claim for a lien, verified by the affidavit of himself, agent or employe which shall consist of a brief statement of the contract, the date the same was made, the date fixed therein, or the time implied, for completion and for the final payment, and the date that the same was completed, if completed, the balance due after allowing all credits, and a sufficiently correct description of the lot, lots or tract of land to pass the title thereof by deed of conveyance.'' The contract in the case at bar fixed the time for the completion of the building at August 1, 1902, and the time for making the final payment at twenty days thereafter, or August 21, 1902. No claim for a lien was filed by appellant as provided by section 7, above quoted, and this suit to enforce a lien was not commenced until April 4, 1903, more than seven months after the final payment became due and payable ''according to the terms of the original contract.'' A mechanic's lien is in derogation of the common law, and a statutue authorizing such lien is to be strictly construed. Williams v. Rittenhouse, Embree Co., 198 Ill. 602. It is, however, insisted on behalf of appellant that as the contract provides for an extension of time for the completion of the building, to be allowed appellant in certain emergencies, and as the bill alleges that such time was extended to December 6, 1902, the time for the final payment was necessarily extended by express provision of the contract to December 26, 1902, and that having commenced his suit within four months after the last-named date, he is, under the allegations of his bill, entitled to a lien as against the encumbrancer, appellee Howe. We do not so construe the statute. The words, ''according to the terms of the original contract,'' were manifestly employed by the legislature for the purpose of fixing a definitely known time within four months after which a contractor must file his claim for a lien, or bring suit to enforce the same, as against creditors, encumbrancers and pur-

chasers. The time when the last payment shall be-. come due and payable, is required by the statute to be stated in the contract, and the time so stated must control, regardless of any extension which may be granted. It is clear that the final payment to a contractor could not, in any event, become due and payable until the work was completed, but it is to be observed that by section 7 the time for filing a claim for lien is not postponed until the completion of the work. The statute provides that the claim for a lien "shall consist of a' brief statement of the contract, the date the same was made, the date fixed *therein*, or the time implied for completion and for final payment, and the date that the same was completed, *if completed,*" etc. It must, therefore, have been contemplated by the legislature, that the work might not in fact be completed at the time the final payment had become due and payable by the terms of the contract, nevertheless, the contractor should be required to file his claim within four months from the time fixed by the contract for the final payment, and if the work was not then completed, he should so state. We are of opinion that the demurrer to the bill interposed by appellee Howe was properly sustained.

It is contended on behalf of appellee, the Bloomington Hotel Company, that appellant is not entitled to a lien as against it, because he neither brought suit to enforce his lien, nor filed a claim therefor, within four months after the last payment became due and payable according to the terms of the original contract. The Mechanic's Lien Act of 1895, as we construe it, does not limit the time within which a contractor may enforce his lien against the owner, elsewhere than in section 9, which provides: "Such suit shall be commenced * * * within two years after final payment is due according to the terms of the original contract, or the lien shall be void as to all parties."

The limitation provided for in section 7, heretofore quoted, relates to the enforcement of liens as against or to the prejudice of other creditors, or encumbrancers, or purchasers, and not to the enforcement of liens as against the owner. We are not authorized to read into the statute a provision which the legislature saw fit to leave out. That prior enactments of the legislature required the contractor to file a claim for a lien before he could enforce the same against the owner cannot avail appellee in this case. Rather, the fact that when the act of 1874 as amended in 1887 was revised in 1895 the legislature omitted such requirement, is proper to be considered as evidencing the legislative intention to excuse the contractor from so doing. We hold that appellant was not required to file a claim for lien in order to enforce his lien as against the owner, and that having brought his suit to enforce such lien within two years after the final payment became due and payable according to the terms of the original contract he is entitled to a decree against the owner for the amount due him under the contract.

The crucial question in the case, is whether or not there was, on January 8, 1903, a final settlement by the architect of all matters in dispute between appellant and the hotel company relative to the claims for allowance of extra time and money by appellant, and for deductions by the hotel company. The contract provides that the amount of all claims for allowance of extra time and money by the contractor, or for deductions by the owner shall be estimated and fixed by the architect, and that his decision shall be final and binding upon both parties. The correspondence between the parties relative to a settlement under the contract throws much light upon the question.

December 24, 1902, George S. Hanna, president of the hotel company, wrote appellant as follows:

"I am in receipt of your favor with certificate for $8,000 enclosed. Am somewhat surprised Mr. Newberry should give it to you or that you should ask it without saying anything to any of the parties interested. I am informed that its payment before Mr. Newberry had notified us in writing twenty days would completely invalidate your surety bond for $35,000 which we don't want to do. If you will read the contract you will see that we agree not to pay more than 85 per cent until twenty days after notice in writing by the architect that the building is entirely completed. I return the certificate herewith. I hope we may be able to settle all matters up right away as we are very anxious to close deal. I had rather expected to have Mr. Newberry call for me when he was here last as I have a number of things I want to bring up."

December 26, 1902, appellant wrote Hanna, as follows:

" I note what you say in regard to the contract. The contract was practically completed on the fifth day of December and possession taken of the building which is, as I understand, about accepting the building with the exception of what minor things might have to be fixed up. If this is so, the amount would be due December 25. Looking at the matter from your standpoint, I should have done as Reedy did and had the work accepted before you took possession of the building. I do not care to put myself on record as doing business in that way. When I saw we could not get all the matter settled up, I merely asked Mr. Newberry for a certificate which he said he could see no harm in giving and I am sure he saw no harm in doing so. As for your releasing the Surety Company, I believe it releases them more by your not paying the certificate after it is issued than it does to pay it, and as far as that goes, I have no desire whatever to get their release as I have paid their fee and there is no reason why the bond should not stand good.

"I do not care how the money is paid. You can make it as a personal loan and I will give you an

order on the hotel company if you think it will make you any more secure. I need the money and unless I get the draft by Saturday you will have to go out and make other arrangements.

"Hoping you will see your way clear to send me the draft, I remain," etc.

December 27, 1902, Hanna replied to appellant, as follows:

"Yours of the 26th at hand. I have consulted our attorney and he advises me not to pay any more money until the building is accepted by the architect. If I were you I would have Mr. Newberry notify the Hotel Co. in writing that the building was completed and in twenty days from that time we will settle in full with you, and if you will come down about next Tuesday or Wednesday and can suggest any way that we can settle and not invalidate your surety bond, we will have the money and can settle at that time. I don't want you think that we are doing anything to embarrass you in any way. What I am doing is on the advice of the Company's attorney and I can't consistently go against it."

December 29, 1902, the architect wrote to Hanna, as follows:

"It is my understanding of the matters of the acceptance of your new hotel building, that the delivery of the building to the tenants or owners constitutes an acceptance of the building.

"I accepted the building as a completion of the contract between your company and Mr. Garthwait on Saturday, December 6, 1902. The various accounts of extras, deductions and minor matters were, however, reserved for final judgment and agreement.

"I believe that it is only fair to Mr. Garthwait, in consideration of the many changes that were made by the tenants, that acceptance of the building proper should date from December 6, 1902."

January 1, 1903, Hanna wrote to appellant, as follows:

"As I promised, I consulted Mr. Morrissey about

the payment of the money and he advises me the only proper way to do would be to have Newberry make a final settlement with you and give you estimate for balance coming to you. He could date it back so as to have the 20 days expire about the time you and he settled. He also says Newberry should require sworn statement from you as to balance owing by you from which mechanics' liens might arise. We are anxious to settle up everything as you can be. We did not receive our loan yet but hope to in a few days. Mr. Posts' lawyer requires some very silly things and we have to comply.

Hoping this may be satisfactory, I am," etc.

January 5, 1903, the architect wrote to Hanna, as follows:

"I expect to be at Bloomington on Wednesday· to endeavor to reach a final conclusion on all of the extra accounts, deductions, etc.

Will you be so kind as to furnish Mr. ·Pillsbury a list of all matters which you or the Directors claim against Mr. Garthwait so that they may be taken up at that time.

I enclose herewith a written acceptance of the general building from Mr. Garthwait, dated December 6, 1902; trust this accords with your views."

The acceptance referred to and enclosed in the last letter is as follows:

"DECEMBER 6, 1902.

BLOOMINGTON HOTEL COMPANY,

Gentlemen: Your Illinois Hotel Building has been accepted by me to-day as a practical completion of the general contract by Mr. F. M. Garthwait, the general contractor. Acceptance of extras, deductions and changes as reserved from the foregoing for final settlement and adjustment.

ROBERT T. NEWBERRY, Architect."

Whether or not the certificate of the architect that the hotel had been accepted by him December 6, 1902, as a practical completion of the general contract, be held to be a final certificate within the meaning of the contract, it is clear that the hotel company under-

stood that the building was substantially completed on that date, and that it should be accepted as of that date. No other inference can be consistently drawn from the letters of December 29, 1902, and January 1, 1903, written by the president of the hotel company to appellant. In the former letter the writer says, "If I were you I would have Mr. Newberry notify the hotel company in writing that the building *was completed*," and in the latter letter he says, "He (the architect) could date it (the certificate) back so as to have the twenty days· expire about the time you (appellant) and he settled."

If the hotel company did not consider that the building was substantially completed prior to January 1, 1903, why should it on December 29th suggest to appellant that the architect notify it that the building was completed, and why should it suggest on January 1st, that the certificate might date back? The letters clearly show that appellant was urging a final settlement, and that the hotel company was interposing no objection to such a settlement other than that the requirements of the contract as to notice had not been technically complied with.

There can be no question but that the architect, when he wrote the letter of January 5th, to the hotel company, fixing the following Wednesday as the time "for a final conclusion on all of the extra accounts, deductions," etc, and requesting the hotel company to furnish Mr. Pillsbury a list of all matters which it claimed against appellant, so that they might be taken up at that time, contemplated that a final settlement could then be had, and that the hotel company so understood it. On Wednesday, January 8, 1903, the architect went to Bloomington and there met appellant, together with Hanna, the president of the hotel company, and Pillsbury, the local superintendent of the building. On that occasion the building was inspected and a conference had relative to the

claims of the respective parties for extra work, deductions, etc. The hotel company then knew that the architect had decided that owing to the many changes made the acceptance of the building should date from December 6, 1902. Knowing this, the hotel company entered no protest whatever, and made no claim for deduction from the contract price on account of delay.

Following that meeting the architect issued to appellant a certificate for the entire balance due him under the contract and for extra work, except the steam fitters' account, in reference to which there is no controversy. The certificate shows upon its face that it is final except as to the steam fitters' account. It gives the total contract price, the total amount of extra work, the amount of former certificates upon which payments had been made to appellant, and the balance due, and states that appellant is entitled to be paid the entire amount of the balance due. When this certificate was presented by appellant to the officers of the hotel company, no claim was made by them that there should be any deduction therefrom on account of liquidated damages for delay. Indeed the evidence shows that the claim for such damages was first made by the hotel company in its answer to appellant's bill for a lien. It cannot be said that the claim of appellant for extra time was not before the architect for his decision. Appellant had made such claim to the architect in November, 1901, and again in August, 1902, and had asked the architect to protect him in that regard under the contract. These notices to the architect of the necessity of an extension of time in which to complete the building were a substantial compliance on the part of appellant with the requirements of the contract in that particular.

We are of opinion that the chancellor improperly charged appellant with the sum of $2,180 as liquidated damages for delay.

A preponderance of the evidence fails to show that appellant agreed to take shares of the capital stock of the hotel company, of the par value of $3,000, to apply as a payment upon his bill for extra work, and the finding of the chancellor in that respect is sustained.

While we are of opinion that the certificate of January 12, 1903, must be held to be conclusive upon appellee, the Bloomington Hotel Company, as to all matters open to final settlement on January 8, 1903, we are satisfied that the hotel company should not be concluded by it as to certain work not then completed and certain repairs and corrections which appellant then agreed to thereafter make, in so far as such work was not finally completed and such repairs and corrections were not made in accordance with the contract.

It clearly appears from the evidence that the inside finishing of the building had not been completed on January 8, 1903; that men in the employ of appellant, or subcontractors under him, were then at work in the building, and so continued until February 3, 1903; that the certificate of January 12, 1903, was issued to appellant by the architect with full knowledge on the part of the latter that the work was not then completed, and upon the assurance and promise of appellant that the work would be completed in accordance with the plans and specifications, and that certain repairs and corrections would be made by appellant.

Unquestionably, the architect had no authority to issue to appellant a final certificate before the work was fully completed upon the mere assurance and promise of appellant that he would complete the work according to the plans and specifications, and a certificate so issued was not a final certificate within the meaning of the contract, and did not become conclusive as such upon the hotel company.

As bearing upon the question of the knowledge of the architect as to the work remaining uncompleted when the meeting of January 8, 1903, was held, and of

his reliance upon the promise of appellant to complete the same, we cite the following excerpts from the record. Pillsbury, the local superintendent, testified: "There was work to be done that Mr. H. Garthwait agreed should be done. We had talked over matters still unfinished at that meeting, such as the concrete floors, the inside finish and painting, telephones and one or two others that were in unsatisfactory condition, and Mr. Garthwait signified his willingness to take care of these matters." Newberry, the architect, testified: "The cracks in the bathroom floor was mentioned and Garthwait gave his word to make good any serious cracks that appeared in the cement, and I took his word for that and other little things." In his letter to Mr. Weldon, the secretary of the hotel company, bearing date January 29, 1903, the architect says:

"Relative to the woodwork and painting, I would say that I have repeatedly urged Mr. Pillsbury to insist upon thoroughly first-class work and finish, and while the work is not altogether satisfactory to me, I trust that you will realize that I could hardly be expected to have the woodwork changed after it had been set in place, and that the faults in the painting have already been many times noted to Mr. Pillsbury and yourself by me. I have recommended that an additional coat of varnish be put on the building and the same rubbed down to a dull finish. This to be additional work to that provided in the contract with the exception of a reasonable allowance to be charged to Mr. Garthwait.

"The general work of the building has already been accepted by me as a general completion of the contract. Final settlement and adjustment of accounts excepted. The accounts were gone over with care by Mr. Pillsbury and myself with your Mr. Hanna and, in general, considered to be reasonable and proper. Of course if there are items not taken up by us and claims which you have against contractors, I would be glad to consider them and will certainly make proper deductions for the same. I have several times asked for itemized list of all the claims that you desire to make and have made deductions for all items about which I have been

instructed. Please furnish me with your list of claims at your earliest convenience.''

We are, therefore, confirmed in the conclusion that the settlement of January 8, 1903, must be held to have only related to work then completed according to the plans and specifications, and that the certificate of January 12, 1903, purporting to be final was prematurely issued to appellant by the architect.

It is quite clear from the evidence that of the work mentioned in the contract there was unfinished and to be repaired by appellant on January 8, 1903, certain interior painting, varnishing and finishing and certain defects in the concrete floors of the bath and toilet rooms.

The item of $487 charged by the chancellor to appellant for defective floors in bath and toilet rooms is justified by the evidence and is a proper charge against appellant.

The evidence bearing upon the question as to whether or not such portion of the interior finishing as was required to be painted, received three coats of paint demanded by the contract, and whether or not the interior of the building was varnished and finished according to the contract, is in such hopeless and inextricable conflict that we are unable to say that the findings of the chancellor with reference to those items are so clearly erroneous as to justify us in disturbing them.

The finding of the chancellor charging $453 against appellant for failing to furnish a third coat of paint and $1,000 for revarnishing and refinishing the interior of the building, will, therefore, be approved.

It appears from the evidence that the cracks in the concrete floor of the kitchen were caused by the floor being torn up by independent plumbing and contractors after the same had been properly laid by appellant, and that he should not be charged with the expense of repairing the same. The charge against ap-

pellant of $312 on account of the defect in the kitchen floor will, therefore, be disallowed.

Notwithstanding appellant filed no objections or exceptions to the findings of the special master, the chancellor in restating the account allowed appellant the sum of $1,000, in addition to the amount allowed him by the special master, for extras. It does not appear what items were considered by the chancellor in arriving at such finding, and a careful examination of the record fails to disclose any basis therefor. The additional allowance of $1,000 to appellant should not have been made.

The contract provides that if the contractor shall allow any indebtedness to accumulate for labor or material to subcontractors that may become liens on the building or premises, and shall fail to pay such indebtedness within five days after demand for the same by the creditors, the owner shall have the right to withhold any money due the contractor until he had discharged said obligations, and apply the same to the payment thereof. On May 16, 1903, the Chicago Veneered Door Company filed its bill against appellant and the hotel company to enforce a subcontractor's lien for $1,936.15, and it is insisted that under the provisions of the contract, above recited, the hotel company may withhold that sum until the claim has been paid by appellant, or may apply the same in payment of the claim. It appears from the allegations of its bill that the Chicago Veneered Door Company had a written contract with appellant to furnish material for the construction of the hotel, and it further appears from the allegations of said bill and from the evidence in this case that said company failed to serve the hotel company, or its agent, or architect, or superintendent having charge of the building, with a copy of its written contract with appellant. This, the Chicago Veneered Door Company was required to do by the provisions of section 25 of the lien law of 1895 in order

that its claim might become a lien, and having failed to entitle itself to a lien as against the property of the hotel company, the latter was not authorized, under its contract with appellant, in withholding the amount of such claim.

In conclusion, we are of opinion that the account between the parties should be stated, as follows:

Amount due appellant February 4, 1903, as stated by the special master,..............$5,474.79

Deductions therefrom as follows:

For revarnishing and refinishing interior of building................$1,000.00

For defective concrete floors in bath and toilet rooms......................487.00

For failure to furnish third coat of paint...............................453.00

Total deductions................$1,940.00

1,940.00

Balance due appellant, Feb. 4, 1903,........$3,534.79.

To which amount should be added interest thereon at 5 per cent. from February 4, 1903, to date of decree.

In so far as the decree of the Circuit Court is inconsistent with the views here expressed, it will be reversed and the cause remanded with directions to enter a decree in conformity with this opinion.

*Affirmed in part, reversed in part, and remanded with directions.*